<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA I. SAENZ-RAMIREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION, A.B.C. COMPANIES (1-100) (fictitious entities), and JOHN DOES (1-100) (fictitious names),<br><br>    Defendants. | Case No. 2:19-cv-18644 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Costco Whole Corporation's ("Costco") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, and for an Order barring the expert report and testimony of Wayne Nolte, Ph.D., PE, pursuant to New Jersey Local Rule 56.1. (ECF No. 93.) Plaintiff Maria I. Saenz-Ramirez ("Ms. Saenz-Ramirez") filed an Opposition. (ECF No. 94.) Costco filed a Reply. (ECF No. 95). Having reviewed the submissions filed in connection with the Motion and having held oral argument on Wednesday, June 21, 2023, for the reasons set forth below and for good cause having been shown, Costco's Motion is **GRANTED**.

**I. BACKGROUND**

On September 23, 2017, at approximately 2:30 p.m., Ms. Saenz-Ramirez alleges she was caused to trip and fall on a storm drain cover located in the parking lot of the Bridgewater, New Jersey Costco warehouse. (ECF No. 93-1 ¶ 1.) Costco is the owner and sole tenant of the Bridgewater, New Jersey property. (ECF No. 94 ¶ 1.) Ms. Saenz-Ramirez, who was visiting the premises, stepped on the storm drain cover, which then dislodged. (ECF No. 93-1 ¶¶ 2–3.) Before

stepping on the storm drain cover, Ms. Saenz-Ramirez did not see or feel anything to suggest the storm drain cover was compromised. (*Id* ¶ 4.) She does not know when the drain cover first became loose prior to the incident and does not know what caused it to ultimately become loose. (*Id.* ¶¶ 5–6.)

In support of her claim, Ms. Saenz-Ramirez served an expert report prepared by Wayne Nolte, Ph.D., PE ("Dr. Nolte"), dated September 23, 2021. (*Id.* ¶ 7.) Dr. Nolte was deposed on July 13, 2022. (*Id.* ¶ 8.) Dr. Nolte opined the curb head, at the time of the incident, was held in place by four bolts, with two on each side of the curb head. (*Id.* ¶ 9.) Dr. Nolte never inspected the bolts, measured the bolts, nor observed the condition of the bolts at the time of the incident. (*Id.* ¶¶ 10–12.) Assuming the bolts were not in place at the time of the accident, Dr. Nolte stated he did not know when the bolts would have gone missing. (*Id.* ¶ 13.) He admitted he did not know whether the bolts were present at the time of the incident and did not perform any testing to see whether the bolts were present. (*Id.* ¶¶ 14–15.) Instead, Dr. Nolte opined the bolts holding the curb head were either not present or were already broken when Ms. Saenz-Ramirez stepped on the cover. (*Id.* ¶ 16.) Dr. Nolte also expressed he did not know whether the bolts were defectively manufactured, and if the bolts were indeed, sheared, he did not know when they would have sheared, or how long it would have taken for the bolts to shear. (*Id.* ¶¶ 17–19.)

On July 7, 2017, approximately two and a half months prior to the incident, Costco employee Tamara Mayo-Neville ("Ms. Mayo-Neville") conducted a Warehouse Facility Audit, which is an inspection of the entire Costco warehouse, including both the interior and exterior, generally performed once per year. (*Id.* ¶¶ 20–21.) All deficiencies discovered during the audit were recorded and photographed. (*Id.* ¶ 22.) Ms. Mayo-Neville confirmed the subject storm drain was properly affixed or mechanically attached to the curb at the time of the audit. (*Id.* ¶ 24.) Had

2

there been a problem with the drain at the time of the audit, the problem would have been noted in the audit report. (*Id.* ¶ 29.) Ms. Mayo-Neville also could not identify any specific damage to the drain between when she conducted the audit on July 7, 2017, and the incident involving Ms. Saenz-Ramirez on September 23, 2017. (*Id.* ¶ 26.)

Dr. Nolte explained he had no evidence to contradict Ms. Mayo-Neville's testimony regarding the inspection of the storm drain cover, but that her inspection procedures were not "part and parcel" of his opinion. (*Id.* ¶¶ 30–32.) Instead, he opined that "impact damage caused a crack in the concrete adjacent to the curb head which would have been an indicator for further examination to see if the curb head was still in place." (*Id.* ¶ 33.) Dr. Nolte did not know when the crack became present; when the impact that caused the crack occurred; or what caused the drain inlet to shear. (*Id.* ¶¶ 34–35, 37.) He also did not know whether there was more than one impact causing the bolts to shear or where the curb would have been impacted to cause the shearing. (*Id.* ¶¶ 38–39.) Dr. Nolte never measured the crack next to the curb head, including for depth. (*Id.* ¶ 43.) He stated he was unaware of any other cracks around the curb head. (*Id.* ¶ 44.)

Dr. Nolte did not know what machinery Costco used during the winter months for snow removal or how many times the machinery was used to clear snow prior to the incident. (*Id.* ¶¶ 40–42.) Robert Mayor, a Costco supervisor at the time of the incident, could not identify any instances where a snowplow hit a curb or otherwise caused damage in the Costco parking lot. (*Id.* ¶ 45.)

Ultimately, Dr. Nolte opined Costco had a duty to inspect the subject drain and curb head daily, citing resources including: "Article XXXVIIB Stormwater Pollution Prevention Management" and "2015 International Property Maintenance Code." (*Id.* ¶¶ 46–48.) However, he admitted neither publication contained any requirements for daily inspections of curb covers. (*Id.*

3

¶¶ 49, 53.) Dr. Nolte also admitted there is no authority requiring a frequency of maintenance or inspection. (*Id.* ¶ 57.) Dr. Nolte further testified he did not know when the curb head was installed. (*Id.* ¶ 70.) He did not inspect, measure, weigh, or otherwise learn the history of the subject curb head or catch basin. (*Id.* ¶¶ 71–74.)

Daniel Valentin ("Mr. Valentin"), a Costco Front-End Assistant at the time of the incident, was responsible, in part, for maintaining the parking lot. (*Id.* ¶ 59.) Throughout the course of a day, Mr. Valentin is in the area of the subject storm drain every five to ten minutes. (*Id.* ¶ 61.) Mr. Valentin never noticed any problems with the blocks around the storm drains or the storm drain itself prior to the incident. (*Id.* ¶¶ 62–64.) If Mr. Valentin noticed something wrong with the drain, he testified he would have reported it. (*Id.* ¶ 65.) At any given time, there are three to seven Costco employees, like Mr. Valentin, collecting shopping carts in the parking lot. (*Id.* ¶ 66.) On the day of the incident, Mr. Mayor also passed by the subject drain on his way into the warehouse. (*Id.* ¶ 68.) He did not notice anything wrong with the drain. (*Id.*) Indeed, on the day of the incident, prior to its occurrence, no one reported anything wrong with the subject drain. (*Id.* ¶ 69)

On October 12, 2017, Garden State Sealing, Inc., a contractor, replaced the storm head cover, in addition to performing other work in the warehouse parking lot. (ECF No. 94 ¶ 4.) The parties' experts did not have access to the subject storm head or the nuts and bolts that secured it.[1] (*Id.* ¶ 5.) Costco's liability expert, John M. Scillia, P.E., stressed the importance of having the failed curb head and cover for failure analysis to determine the cause and origin of the failure. (*Id.* ¶ 6.) Mr. Scillia explained, without the failed evidence in hand, the origin of failure could not be properly investigated. (*Id.* ¶ 7.)

---

[1] It is disputed why the subject nuts and bolts were not inspected, and whether Costco could have, or was asked to, preserve the evidence. (ECF No. 94 ¶¶ 3,5; ECF No. 95 ¶ 5.)

4

Ms. Saenz-Ramirez filed a Complaint in the Superior Court of New Jersey, Law Division, Union County on September 21, 2019, under Docket Number UNN-L-3316-19, asserting negligence against Costco.[2] (ECF No. 1., Ex. A.) Costco petitioned to remove the action to this Court on October 2, 2019 (ECF No. 1), and filed an Answer with Cross-Claims for common law and contractual indemnification, for judicial determination, and for passive and secondary negligence (ECF No. 9). The Court granted Costco leave to file a motion for summary judgment on August 8, 2022, and set forth a briefing schedule. (ECF No. 87.) Costco's motion, Ms. Saenz-Ramirez's opposition, and Costco's reply were all filed on the docket on November 2, 2022. (ECF Nos. 93–95.) The Court held oral argument on the motion on June 21, 2023. (ECF No. 97.) Both parties and counsel were present. The Court asked the parties to meet and confer regarding a potential settlement before the Court rendered a decision on the motion, and requested an update on the discussions by 3:00 P.M. on June 23, 2023. (*Id.*) The parties later notified the Court they failed to settle.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2] The parties stipulated to dismiss, with prejudice, Ms. Saenz-Ramirez's lost wage claim, which was accepted by this Court on July 9, 2020. (ECF No. 16.)

(1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa*., 926 F.2d 1368, 1380 (3d Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd*., 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

6

that there is a genuine issue for trial.'" *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Educ. v. N.E., ex rel M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," if a nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley*, 298 F.3d at 276–77). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this

obligation shifts the burden lo [sic] the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz*, 972 F.2d at 55 (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

### III. DECISION

Costco moves for summary judgment arguing: (1) there is no genuine issue of material fact in dispute; (2) Ms. Saenz-Ramirez is unable to prove that Costco had either actual or constructive notice of the alleged condition; (3) Ms. Saenz-Ramirez is unable to establish Costco's breach of duty; and (4) Dr. Nolte's proposed expert liability report and testimony are a net opinion that should not be considered and should be barred at the time of trial. (ECF No. 93-2 at 3–23.) In opposition, Ms. Saenz-Ramirez argues Costco's motion must be denied because: (1) Costco should not benefit from spoliating evidence; (2) Costco's duty is not dictated by Dr. Nolte's opinion, but well-established case law; (3) Dr. Nolte's opinion is not a net opinion and should be considered by the Court; and (4) actual or constructive notice need not be proven, as the doctrine of *res ipsa loquitor* applies. (ECF No. 94 at 20–34.) Further, Ms. Saenz-Ramirez argues she is entitled to an adverse inference at the time of trial because Costco destroyed or discarded key evidence and Costco was notified of its duty to preserve the evidence, but willfully destroyed it. (*Id.* at 17–20.) Costco replies: (1) Ms. Saenz-Ramirez cannot prove notice; (2) Dr. Nolte's report is a net opinion;

(3) Ms. Saenz-Ramirez's impermissible cross-motion should not be considered; (4) Ms. Saenz-Ramirez's claim of spoliation fails; and (5) *res ipsa loquitor* is inapplicable to this matter. (ECF No. 95 at 2–25.) The Court finds Ms. Saenz-Ramirez has failed to establish Costco's negligence as a matter of law, and therefore, Costco's motion for summary judgment is granted.

### A. Ms. Saenz-Ramirez Has Failed to Establish Costco's Negligence, as a Matter of Law.

Costco argues summary judgment should be granted in its favor, and Ms. Saenz-Ramirez's Complaint should be dismissed in its entirety, because Ms. Saenz-Ramirez cannot establish Costco breached its duty by showing they had actual or constructive notice of the alleged condition. (ECF No. 93-2 at 4–11.) Ms. Saenz-Ramirez contends Costco's motion should be denied, because actual or constructive notice is not required where the doctrine of *res ipsa loquitor* applies. (ECF No. 94 at 29–34.) In reply, Costco submits Ms. Saenz-Ramirez has admitted she cannot prove constructive notice, and *res ipsa loquitor* does not apply because: (1) Costco did not have exclusive control of the premises; (2) the occurrence itself does not "ordinarily bespeak" negligence on the part of Costco; (3) the injury was the result of Ms. Saenz-Ramirez's own voluntary act or neglect; and (4) Ms. Saenz-Ramirez does not meet all of the elements of the doctrine, and misapplies the standard. (ECF No. 95 at 13–25.) Because Ms. Saenz-Ramirez cannot, and will not be able to, establish actual or constructive notice, and because the doctrine of *res ipsa loquitor* does not apply to the facts of this case, Costco's Motion for Summary Judgment is granted.

In a premises liability action, owners or occupiers of a premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice. *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Sup. Ct. App. Div. 2016) (citing *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. Sup. Ct. App. Div. 2003)). Therefore, ordinarily, an injured plaintiff must prove the defendant "had actual or constructive knowledge of

the dangerous condition that caused the accident." *Id.* (citing *Nisivoccia*, 818 A.2d at 316). "The absence of such notice is fatal to plaintiff's claims of premises liability." *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Sup. Ct. App. Div. 2013).

Constructive notice exists when a condition has existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Jeter v. Sam's Club*, 271 A.3d 317, 324 (N.J. 2022) (quoting *Troupe*, 129 A.3d at 1114). Length of time is not the only relevant factor to the Court's inquiry, however. Constructive notice is also dependent upon "the characteristics of and surrounding the dangerous condition" that should have made the defendant aware of the condition. *Melendez v. Target Corp.*, No. 18-09405, 2022 WL 1617709, at *9 (D.N.J. May, 23, 2022) (quoting *Yazujian v. PetSmart*, No. 13-06202, 2016 WL 4408817, at *8 (D.N.J. Aug. 16, 2016); *Teixeira v. Walmart Stores, Inc.*, No. 18-13103, 2021 WL 4272828, at *4 (D.N.J. Sept. 16, 2021) (granting summary judgment for the defendant where the plaintiff presented no evidence of how long a spill was on the floor, and presented no additional facts that could lead to an inference the defendant nevertheless had constructive notice). Specifically, constructive notice may be inferred from eyewitness testimony or from the characteristics of the problematic condition, which may indicate how long the condition lasted. *Jeter*, 271 A.3d at 324 (citing *Troupe*, 129 A.3d at 1114.) Crucially, however, "[t]he mere existence of an alleged dangerous condition is not constructive notice of it." *Arroyo*, 78 A.3d at 586 (quoting *Sims v. City of Newark*, 581 A.2d 524, 529 (N.J. Super. Ct. Law. Div. 1990)); *see also Long v. Landy*, 171 A.2d 1, 6 (N.J. 1961) ("The mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an incident of negligence.").

Constructive notice is usually a question of fact for the jury, and "is only appropriate for summary judgment when no reasonable juror could conclude otherwise." *Melendez v. Target*

10

*Corp.*, No. 18-09405, 2022 WL 1617709, at *9 (D.N.J. May, 23, 2022) (citing *Troupe*, 129 A.3d at 1116); *Prioleau v. Kentucky Fried Chicken, Inc.*, 85 A.3d 1015, 1022 (N.J. Sup. Ct. App. Div. 2014) ("An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess.") (quoting *Landy*, 171 A.2d at 7).

Here, there is no evidence in the record indicating Costco had actual notice of the allegedly defective storm drain cover.[3] There is similarly a lack of competent evidence in the record supporting that Costco had constructive notice of the condition. First, there is no concrete evidence in the record demonstrating, and Ms. Saenz-Ramirez admits she does not know, when the drain cover first became loose before the incident. (ECF No. 93-1 ¶ 5.) She similarly does not know what caused the drain cover to come loose. (*Id.* ¶ 6.) Indeed, Dr. Nolte testified he had "no idea" when the bolts on the storm cover may have sheared, and whether it would have occurred minutes, hours, or days prior to Ms. Saenz-Ramirez's incident. (*Id.* ¶¶ 18–19.) He similarly lacked information regarding how and when any impact or impacts may have caused the bolts to shear, leading to the loosening of the storm cover. (*Id.* ¶¶ 35, 38.) The only information this Court has been presented regarding the condition of the storm drain at any relevant time is that on July 7, 2017, about two and a half months prior to Ms. Saenz-Ramirez's fall, the storm drain was inspected in connection with a Warehouse Facility Audit and confirmed to be properly mechanically attached to the curb. (*Id.* ¶¶ 20–27.) Further, no one, including several Costco employees who conducted

---

[3] During oral argument on June 21, 2023, counsel for Ms. Saenz-Ramirez conceded Costco did not have actual notice of the allegedly defective condition of the storm drain cover. (*See* ECF No. 97.)

11

inspections daily, noticed or reported any defects with the storm cover between that time and the time of the incident. (*Id.* ¶¶ 58, 68.)

Because Ms. Saenz-Ramirez failed to establish the length of time for which the alleged defect existed prior to the accident, she necessarily fails to allege the defect existed "for a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *See Jeter*, 271 A.3d at 324 (quoting *Troupe*, 129 A.3d at 1114); *Teixeira*, 2021 WL 4272828 at *4. The simple fact that the defect ultimately came to exist is insufficient to establish constructive notice as a matter of law. *Arroyo*, 78 A.3d at 586; *Long*, 171 A.2d at 6. Indeed, Ms. Saenz-Ramirez admits in the Preliminary Statement of her Opposition brief, she "whole heartedly agrees that her ability to carry her burden of showing that defendant had constructive notice of the dangerous condition will be neigh impossible." (ECF No. 94 at 16.). Accordingly, Ms. Saenz-Ramirez has failed to establish, and no reasonable jury could conclude from the facts presented, that Costco had actual or constructive notice of the defective storm cover and was therefore negligent.

Instead, Ms. Saenz-Ramirez argues in her papers such proof is not necessary because the doctrine of *res ipsa loquitor* applies. The Court disagrees. The doctrine of *res ispa loquitor* is "an evidential rule used to circumstantially prove the *prima facie* existence of negligence where proof of the specific elements of negligence has not been shown." *Apuzzio v. J. Fede Trucking, Inc.*, 809 A.2d 812, 815 (N.J. Sup. Ct. App. Div. 2002). It is a Latin phrase, meaning "the thing speaks for itself." *Szalontai v. Yazbo's Sports Café*, 874 A.2d 507, 515 (N.J. 2005) (quoting *Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 29 (N.J. 1984)). The doctrine requires: "(1) the occurrence itself ordinarily bespeaks negligence; (2) the instrumentality [causing the injury] was within the defendant's exclusive control; and (3) there is no indication in the circumstances that the injury

12

was the result of the plaintiff's own voluntary act or neglect." *Cockerline v. Menendez*, 988 A.2d 575, 584 (N.J. Sup. Ct. App. Div. 2010) (alterations in original) (quoting *Bornstein v. Metro. Bottling Co.*, 139 A.2d 404, 408 (N.J. 1958)). That "there is no explanation for an accident does not, by itself, entitle a plaintiff to invoke" the doctrine. *Id.* Instead, a plaintiff must produce evidence that reduces the likelihood of other causes so that "the greater probability [of fault] lies at defendant's door." *Id.* (quoting *Jimenez v. GNOC Corp.*, 670 A.2d 24, 30 (N.J. Sup. Ct. App. Div. 1996)).

*Res ipsa loquitor* does not apply to the facts of this case, because Costco was not in exclusive control of the accident location and the occurrence itself does not "bespeak negligence." In a similar case, the Third Circuit applied New Jersey law to reject the application of the doctrine of *res ipsa loquitor* where a defendant was injured by a falling "skid" that had been in the same position for a day or two before it was struck or moved by someone or something, causing the accident. *Conca v. Nacirema Operating Co.*, 329 F.2d 317, 317 (3d Cir. 1964). While the skid was owned and used by the defendant, "it was sometimes moved from one location to another on the pier by persons other than [the defendant's] employees." *Id.* at 318. There was also "a constant moving of vehicles, trucks, cranes, and high-lows on the pier operated by person other than [the defendant's] employees." *Id.* Therefore, the Court held the occurrence did not "bespeak" negligence because nothing in the record demonstrated defendant was the "most likely cause" of the occurrence, and the location of the accident was "not within such exclusive control of the defendant." *Id.* In a New Jersey Appellate Division case, the Court similarly held "*res ipsa loquitor* was inapplicable because it is impossible to conclude that the instrumentality causing the injury was within defendant's exclusive control." *Cockerline*, 988 A.2d at 586. The Court explained

13

"[m]ultiple factors were at work, not all of them human," including the weather, the operation of other vehicles, and the actions of third parties. *Id.*

Ms. Saenz-Ramirez's accident occurred in the parking lot of a Costco warehouse, where there is constant vehicular and pedestrian traffic. (ECF No. 93-1 ¶ 1; ECF. No. 93-5 Ex. T.) This includes third-party delivery trucks, street cleaning vehicles, snow removal vehicles, customer vehicles, cash pick-up trucks, landscaping vehicles, and the like. Dr. Nolte, Ms. Saenz-Ramirez's proposed expert, admits he had "no idea" what happened to the bolts on the storm drain cover, or how the crack adjacent to the curb head came to be. (ECF No. 93-1 ¶¶ 18, 33.) He did not know whether the bolts were defectively manufactured; whether there was an actual impact to the storm drain; whether the snow removal machinery or other vehicles contributed to the defect; or whether the crack and shearing of the bolts was caused by one or more than one impacts. (*Id.* ¶¶ 17, 36–38.) Nothing proffered by Dr. Nolte, or presented by Ms. Saenz-Ramirez in support of her case, sufficiently established Costco was in exclusive control of the parking lot or that the fault for the accident lied more with Costco than any other external factor. *See Cockerline*, 988 A.2d at 584. Indeed, it is just as likely, if not more likely, that some third-party actor contributed, in whole or in part, to the crack and sheared storm drain bolts, causing Ms. Saenz-Ramirez's injury. *See Conca*, 329 F.2d at 317. Counsel for Ms. Saenz-Ramirez conceded same at oral argument held on June 21, 2023. (*See* ECF No. 97.) Because there is no clear explanation as to the origin of the defect, this Court will not impose liability for Ms. Saenz-Ramirez's injury upon Costco. *See Cockerline*, 988 A.2d at 584.

As a plaintiff must meet all the elements of the three-part test to establish the doctrine of *res ipsa loquitor*, "failure to prove any one of those elements by a preponderance of the evidence renders the doctrine and its concomitant burden-shifting unavailable to that plaintiff." *Id.* at 586

14

(quoting *Szalontai*, 874 A.2d at 509–10.) In this case, Ms. Saenz-Ramirez has failed to establish at least two of the required prongs, and therefore the doctrine of *res ipsa loquitor* does not apply. Ms. Saenz-Ramirez has failed to establish Costco had notice of the incident, or any meritorious alternative argument. Accordingly, Ms. Saenz-Ramirez has failed to establish Costco's negligence, as a matter of law, requiring dismissal of Ms. Saenz-Ramirez's Complaint.[4]

### B. The Court Will Not Consider Ms. Saenz-Ramirez's Cross-Motion for an Adverse Inference.

Ms. Saenz-Ramirez argues, for the first time in her opposition to Costco's summary judgment motion, she is entitled to an adverse inference at the time of trial because Costco destroyed or discarded the only key evidence, the curb head and cover, which was required for further testing and evaluation. (ECF No. 94 at 17–23.) She claims Costco was notified of its duty to preserve the evidence but still willfully destroyed it. (*Id.* at 17–19.) Therefore, Ms. Saenz-Ramirez proffers Costco should not benefit on summary judgment from spoliation of the evidence. (*Id.* at 20.) In opposition, Costco submits Ms. Saenz-Ramirez's cross-motion should not be considered. (ECF No. 95 at 4–5.) Further, Costco contends Ms. Saenz-Ramirez's argument fails because there was no spoliation and Ms. Saenz-Ramirez is barred from claiming spoliation under the doctrines of waiver, laches, and equitable estoppel. (ECF No. 95 at 5–13.)

The Court agrees with Costco that Ms. Saenz-Ramirez's arguments regarding spoliation of evidence were presented in the form of an impermissible cross-motion. The cross-motion failed to include a Notice of Motion and other required documents, and more importantly, was filed without leave of court, as required by previous Court orders. (*See* ECF No. 3 at 2) ("Leave is not required

---

[4] Because the Court grants Costco's motion for summary judgment based upon Ms. Saenz-Ramirez's failure to establish, as a matter of law, that Costco had sufficient notice of the alleged defect, its argument regarding breach of duty and the admissibility of Ms. Saenz-Ramirez's expert's report and testimony need not be addressed, as it would not alter the Court's conclusion.

for Rule 12(b) motions, motions to seal, or attorney admission/withdrawal motions. Leave is required to file any motion other than those set forth above.") Ms. Saenz-Ramirez had over three years to properly raise this issue in federal court, but the matter was never presented, including during discussions with the Court regarding the summary judgment briefing schedule. Despite the numerous status conferences and filings throughout the pendency of this litigation, this is the first time the issue has been raised to the Court.

Not only is Ms. Saenz-Ramirez's argument for spoliation procedurally improper, but were this Court to consider the argument on its merits, the claim would still fail. The concept of spoliation in law describes "the hiding or destroying of litigation evidence, generally by an adverse party." *Rosenblit v. Zimmerman*, 766 A.2d 749, 754 (N.J. 2001) (citing Bart S. Wilhoit, Comment, Spoliation of Evidence: The Viability of Four Emerging Torts, 46 UCLA L.Rev. 631, 633 (1998)). Spoliation, however, is not a cause of action in and of itself. Instead, spoliation of litigation evidence has been recognized by the New Jersey Supreme Court as wrongful conduct, with the tort remedy for that conduct being an action for fraudulent concealment. *Id.* at 757. An action for fraudulent concealment requires: (1) a legal duty to disclose; (2) a material fact; (3) that plaintiff could not discover without defendant disclosing it; (4) that defendant intentionally failed to disclose the fact; and (5) that plaintiff was harmed by relying on the non-disclosure. *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226–27 (D.N.J. 2020) (citing *Polhill v. FedEx Ground Package Sys.*, 604 F. App'x 104, 108 n. 2 (3d Cir. 2015)); *see also Rosenblit*, 766 A.2d at 758. Ms. Saenz-Ramirez has failed to sustain the appropriate cause of action for fraudulent concealment against Costco, and further fails to meet the elements required for the claim.

First, Ms. Saenz-Ramirez did, in fact, have an opportunity to inspect the drain cover before the area was repaired. She and her attorneys visited the site, conducted an inspection, and took

photographs two days after the incident occurred. (*See* ECF No. 95, Ex. M at Tr. 89:15–90:12.) While Ms. Saenz-Ramirez did not have the opportunity to have the area inspected by an expert before the storm drain cover was repaired, there is nothing in the record to suggest she was prevented from accessing the area at any time after the incident. Further, while Ms. Saenz-Ramirez included a letter with her opposition, purporting to serve as a demand for the preservation of evidence, the letter was unsigned and never mentioned or produced in discovery. (*See* ECF No. 94, Ex. E.) It is unclear whether the letter was ever sent or received by Costco, and that fact was never confirmed by counsel for Ms. Saenz-Ramirez during oral argument. Regardless, the letter requests "the preservation of any and all evidence relating to the accident including, but not limited to, accident reports, witness statements, inspection records, and/or sweep logs, any and all surveillance video." (*Id.*) It failed to request that Costco preserve the drain cover or its components. (*Id.*)

Ms. Saenz-Ramirez did not dispute that Costco complied with her enumerated list for production, and otherwise demonstrated a general willingness to comply with the requests. Instead, she faults Costco for having the storm drain cover repaired about two and a half weeks later, on October 12, 2017. However, nothing in the record suggests Costco's repairing of the storm cover drain—a known, dangerous condition—demonstrated an intention to destroy evidence. The subsequent remedial measures taken to repair the cover are "not admissible as showing negligence or as amounting to an admission of negligence," without more. *Szalontai v. Yazbo's Sports Café*, 874 A.2d 507, 518 (N.J. 2005) (citations omitted); *see also* N.J.R.E. 407. It is a plaintiff's burden "to substantiate [any] claim [of spoliation] . . . [and] to show that the remedial measures undertaken by [a] defendant were for any reason other than to correct what had become a dangerous condition." *Id.* Ms. Saenz-Ramirez has failed to demonstrate to this Court that Costco's repair of

17

the storm drain cover—after two and a half weeks, an initial inspection by Ms. Saenz-Ramirez, and approximately two years before any action was filed—was for any reason other than that the area had to be repaired for the safety of others.

Because leave of court was required to move for relief from Costco's purported spoliation of evidence, which should have been propounded as the tort remedy of fraudulent concealment, Ms. Saenz-Ramirez's argument for spoliation of evidence is not properly before this Court. Even if Ms. Saenz-Ramirez appropriately raised the issue of spoliation and propounded a claim for fraudulent concealment, her cause of action would fail. Ms. Saenz-Ramirez has failed to meet the elements to establish an entitlement to the tort remedy, most importantly, that Costco intentionally repaired the area for the purpose of destroying evidence, and not simply to avoid further injuries or accidents.

### IV. CONCLUSION

For the reasons set forth above, Costco's Motion for Summary Judgment (ECF No. 93) is **GRANTED**.

/s/ Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2023